```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

VIOLA BERT, CONNIE BIGGS, ARGENTINA
HARRISON, MARY HINKLE, LAURA JONES,
VALERIE LOWE MCELROY, THELMA NETTLES,
SARAH WOODSON, and COLLEEN LINO,              CV-06-4789 (CPS)

                        Plaintiffs,
                                              MEMORANDUM OPINION
        - against -                           AND ORDER

NEW YORK CITY BOARD OF ELECTIONS,

                        Defendant.

------------------------------------X
```

SIFTON, Senior Judge.

Plaintiffs Viola Bert, Connie Biggs, Argentina Harrison, Mary Hinkle, Laura Jones, Valerie Lowe McElroy, Thelma Nettles, Sarah Woodson, and Colleen Lino bring this action under 42 U.S.C. § 1983 seeking preliminary and permanent injunctions directing defendant New York City Board of Elections ("Board of Elections" or "Board") to place Allan W. Jennings, Jr.'s name on the ballot for the Democratic primary to be held September 12, 2006. Plaintiffs are residents of Queens County in the 10th Senatorial District and are registered in the Democratic Party. They argue that they have been denied their right to vote for a candidate of their choice, as secured under the Federal Constitution, as a result of the process followed by the Board of Elections which effectively made it impossible for Jennings to file a procedurally adequate petition to validate in state court;

- 2 -

plaintiffs allege that the information contained in the Board's decision about the validity of the designating petition was a precondition for an adequate petition to validate signatures but was not made available in time for such a petition to be filed.[1]

---

[1] A review of the relevant statutory framework of the New York election law is helpful. Under New York Election Law, "the designation of a candidate for party nomination at a primary election shall be by designating petition," except as otherwise provided. New York Election Law § 6-116. A minimum of 1,000 signatures on the designating petition are required "[f]or any office to be filled by all the voters of any state senatorial district." New York Election Law § 6-136(2)(h). The sheets of a designating petition must be delivered to the Board of Elections according to regulations promulgated by the Board. New York Election Law § 6-134(2). The Board requires, for example, that the designating petition reflect each petition signer's residence address and date of signature, New York Election Law § 6-130, that the signer be an enrolled voter of the political party for which the candidate stands and be entitled to vote at that party's primary election, New York Election Law § 6-132, and that the signer not sign a petition or petitions designating more candidates than can be elected. New York Election Law § 6-134(3). "When a determination is made that the designating petition does not comply with such regulations, the candidate shall have three business days from the date of such determination to cure the violation." New York Election Law § 6-134(2).

Voters may object to designating petitions under New York Election Law § 6-154(2), which provides that any voter enrolled to vote for a party position for which a designating petition is filed may file written objections "with the officer or board with whom the original petition is filed within three days after the filing of the petition to which objection is made." When such an objection is filed, the voter must file specifications of the grounds of the objections within six days thereafter with the same officer or board. "[I]f specifications are not timely filed, the objections shall be null and void." New York Election Law § 6-154(2).

A candidate aggrieved by the nomination or designation of any candidate for any public office or party position may also contest the nomination or designation in a Supreme Court proceeding. *See* New York Election Law § 16-102(1). Under New York law, an "aggrieved" candidate is one who is the opponent of a candidate whose designating petition is being challenged, *Martin v. Tutunjian*, 454 N.Y.S.2d 343, 344 (N.Y. App. Div. 1982), or one who has received an adverse ruling from the Board of Elections invalidating his designating petition. *Colvin v. Romeo*, 398 N.Y.S.2d 292, 293-94 (N.Y. App. Div. 1977). Such an aggrieved candidate can request the Supreme Court to invalidate (in the case of the opponent candidate) or re-validate (in the case of the petitioner candidate) voter signatures on a designating petition; the burden of proof is on the moving party. *See, e.g., Goldstein v. Carlsen,* 398 N.Y.S.2d 459 (N.Y. Sup. Ct. 1977); *Petition of Caples*, 173 N.Y.S.2d 733 (N.Y. Sup. Ct. 1951). When filing such a petition to validate or invalidate,

> [a] proceeding with respect to a petition shall be instituted within fourteen days after the last day to file the petition, or within three business days after the officer or board with whom or which such petition was filed, makes a determination of invalidity with respect to such petition, whichever is later . . . .

- 3 -

Plaintiffs further allege that plaintiff Colleen Lino was denied her constitutional due process right to a hearing to contest the Board's finding that her signature on the designating petition was invalid.  For the reasons set forth below, plaintiffs' motion is denied.

## BACKGROUND

The following sets forth the findings of fact and conclusions of law on which this decision is based as required by Rule 65 of the Federal Rules of Civil Procedure.

On July 13, 2006, Allan W. Jennings, Jr., in order to qualify as a candidate for the Democratic primary election for State Senator from the 10th Senatorial District to be held September 12, 2006, filed a designating petition.  The petition contained 1,777 signatures, 777 more than the 1,000 required by New York State Election Law § 6-136.  Subsequently, on July 16, 2006, voter Keysha T. Beasly filed general objections to the designating petition with the Board of Elections and followed up

---

New York Election Law § 16-102(2).
    The court may direct the holding of a new primary election "where it finds that there has been such fraud or irregularity as to render impossible a determination as to who rightfully was nominated or elected." New York Election Law § 16-102(3). A final order in any proceeding concerning the names of candidates on ballots must be made "no later than the day following the day on which the case is heard" if the proceeding takes place less than five weeks before election day. New York Election Law § 16-102(4).

- 4 -

with specific objections to over 900 signatures on July 22, 2006.

On July 21, 2006, Beasly, together with Ada L. Smith, the incumbent state senator and Jennings' opponent in the Democratic primary, made an application in New York State Supreme Court, Queens County for an order declaring Jennings' designating petition invalid (the "petition to invalidate").  Thereafter, Jennings himself filed a petition to validate the designating petition before the Supreme Court on July 24, 2006.  Since the Board of Elections had not yet ruled on Beasly's original objections, Jennings' petition to validate did not specify any determinations by the Board of Election as erroneous. *See* New York State Election Law § 16-102; *Krueger v. Richards*, 450 N.E.2d 219 (N.Y. 1983).  According to Jennings, he believed that he was required by law to file his petition to validate no later than fourteen days after the filing of the designating petition, or July 27, 2006, even though the Board had not yet issued its decision.

On July 31, 2006, four days after the alleged July 27 deadline, the clerk of the Board of Elections issued a report invalidating 760 of the signatures on the designating petition, leaving 1,017 valid signatures.  A hearing with respect to these determinations was held before the Board of Elections on August 3, 2006.  At the conclusion of that hearing on August 3, the Board adopted the clerk's entire report.  The parties then

- 5 -

reviewed the specifications of objections made by the Board from August 4 through August 6, 2006 in preparation for the pending Supreme Court hearing.

From August 7 through August 9, 2006, the Supreme Court held a hearing on Beasley and Smith's petition to invalidate in which each contested signature was individually reviewed. On August 9, the court dismissed Jennings' petition to validate. In a decision issued August 10, 2006, the court invalidated an additional 84 signatures contained in the designating petition over and above those already invalidated by the Board of Elections, leaving Jennings with 933 total signatures, 67 short of the required 1000. As a result, the court ordered the Board of Elections not to place Jennings' name on the Democratic primary ballot.

Jennings appealed the Supreme Court's decision to the Second Department of the Appellate Division of the New York Supreme Court, arguing that he was required to file an anticipatory petition to validate because he did not yet have the decision of the Board, that such anticipatory petitions were permissible under state law and alleging that he could re-validate over 140 signatures about which the Board and the state court had erred in their determinations. The appellate court affirmed the lower court's decision on August 16, 2006 on the grounds that Jennings' petition to validate was insufficiently pleaded as a matter of

- 6 -

law since it failed to "specify the individual determinations of a board of elections that the candidate claims were erroneous."[2] *Jennings v. Board of Elections of City of New York*, 819 N.Y.S.2d 487 (N.Y. App. Div. 2006). Jennings application for leave to the Court of Appeals was denied. Plaintiffs now state that Jennings would be able, if allowed, to re-validate over 130 signatures invalidated by the Board of Elections, which would put Jennings above the 1,000 signature threshold. Plaintiffs fail, however, to specify even now which signatures they propose to validate or why the Board was wrong in invalidating the signatures.[3]

The matter is currently before this Court on an application pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction requiring defendant to place Jennings' name on the Democratic primary ballot.

## DISCUSSION

*Standard for Preliminary Injunctions*

The general standard for issuing a preliminary injunction requires that the movant show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground

---

[2] The court made no findings with respect to Jennings' arguments that certain signatures should be validated.

[3] To be sure, plaintiffs list four categories of error. However, no affidavits or other offer of proof establish, at least prima facia, which signatures fall into which category.

- 7 -

for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Gold v. Feinberg*, 101 F.3d 796, 800 (2d Cir. 1996); *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir. 1996).[4]  In cases where "the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction will be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Harris v. Diaz*, No. 04 Civ. 9124(RMB), 2004 WL 2912888, at *3 (S.D.N.Y. Dec. 14, 2004) (applying this rule to a case in which candidate's placement on primary ballot was challenged) (citing *No Spray Coalition, Inc. v. City of N.Y.*, 252 F.3d 148, 150 (2d Cir. 2001)) (internal citations and quotations omitted).  Moreover, the bar is further raised "when the injunction sought will alter rather than maintain the status quo." *Id.* (internal citations and quotations omitted). In such cases, "the movant must show 'clear' or 'substantial' likelihood of success." *Id.* (internal citations and quotations omitted). The present case, in which the Board of Elections acted in furtherance of the statutory electoral scheme and in which the state court has already ordered the Board to

_____

[4] The Second Circuit Court of Appeals reviews a district court's decision to grant or deny a motion for preliminary injunction for abuse of discretion.  It will "reverse the district court only if it relied on clearly erroneous findings of fact, misapprehended the law, or erred in formulating the injunction." *Gold*, 101 F.3d at 800 (internal citations omitted).

- 8 -

remove Jennings' name from the ballot, meets the requirements for
application of this heightened standard.

In this case, plaintiffs fail to meet the standards required
for preliminary injunctive relief.[5]  Denying the preliminary
injunction in this case would not lead to irreparable harm. If
the election is allowed to proceed without Jennings, and if after
a hearing on the merits this Court were to determine that
Plaintiffs had successfully made their § 1983 claim, this Court
could order a re-election as a remedy.  *See Gold*, 101 F.3d
(reversing preliminary injunction to delay primary election
because state law remedy of ordering a new election later on was
adequate); *Id.* at 803 (Oakes, J., concurring) (noting that
federal courts' monitoring of election violations in state
primaries would involve "extremely complicated questions of
remedy, including whether to order a reelection overall or only
in certain districts, etc.").[6]

More to the point, however, plaintiffs' own papers suggest
that they have brought this injury on themselves, as defendant
has pointed out, by delaying several weeks after the ruling by

---

[5] Even if the heightened standard discussed above would not apply,
plaintiffs would fail to meet their burden under the lower standard as well
for the same reasons discussed herein.

[6] Under New York Election Law § 16-102(3), a state court is also
authorized to hold a new primary election "where it finds there has been such
fraud or irregularity as to render impossible a determination as to who
rightfully was nominated or elected."  In addition, the Court would have to
hold a protracted hearing on the invalidated signatures which simply cannot be
done in the few days remaining before the primary.

- 9 -

the Supreme Court on August 10 before bringing this case here on the eve of the primary.[7]  Whatever injury has been suffered as a result of any erroneous decision by the Board of Elections could not conceivably be remedied in the few days remaining before the election.

In any event, one element of plaintiffs' claim is of course that they have been injured as a result of the Board's procedure. To establish that the designating petition was in fact valid, they must show that a sufficient number of invalidated signatures should not have been invalidated.  Since plaintiffs have not identified any such signatures (apart from that of plaintiff Lino),[8] much less offered any evidence why the Board's findings were wrong, they have not even begun to make a showing which would, perhaps, be sufficient at a hearing on the merits.  The mere fact that the Board and state court divided the invalidated signatures into categories, as noted in plaintiffs' filings, is not evidence that a sufficient number of signatures invalidated

---

[7] One of the plaintiffs in the present action, Colleen Lino, participated in the state court hearing as a witness and worked for Jennings collecting signatures; it cannot be claimed that she had no notice of the state court proceedings.

[8] It is noted here that Lino's requested remedy under her separate due process claim would also fail at a hearing on the merits.  Even if rehabilitating Lino's signature would also rehabilitate other signatures as well, the number of signatures validated by that determination would fall far short of the 67 which Jennings requires.  At the hearing, plaintiffs' counsel indicated that validating Lino's signature would bring in 5 additional signatures for whom Lino was the subscribing witness, and a review of the state court record indicates that Lino was the subscribing witness for fewer than 40 total signatures, many of which it appears were not invalidated by the state court.

- 10 -

by the Board and the state court could be rehabilitated to validate the designating petition.  This Court cannot be expected to issue a preliminary injunction on mere conclusory statements by movants.

In addition, for the reasons discussed below, plaintiffs are unable to show a clear or substantial likelihood of success on the merits. Therefore, the preliminary injunctive relief requested by plaintiffs may not be granted by this Court.

*42 U.S.C. § 1983 Claims*[9]

While the right to vote is regarded as "a fundamental political right," *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886), federal court is generally not the appropriate place to deal with the minutia of state election disputes.  "Principles of federalism limit the power of federal courts to intervene in state elections . . . . Only in extraordinary circumstances will a challenge to a state . . . election rise to the level of a

---

[9] At the hearing on this motion there was some confusion as to whether plaintiffs were making a facial challenge to the New York Election Law.  That is clearly not the case.  First, plaintiffs' complaint makes no allegation of statutory unconstitutionality, arguing rather that it was the "conduct and actions" of the Board, in carrying out its statutory function, which led to a "deprivation of plaintiffs' . . . right to vote" and due process rights. Complaint at 8, *Bert v. New York City Board of Elections*, No. 06-4789 (E.D.N.Y. August 31, 2006).  Moreover, facial constitutional challenges must allege that the statute in question cannot be constitutionally applied.  In this case, we know that the statute can be applied constitutionally, since if the Board does rule within the fourteen-day window, there would have been no argument that anyone's right to vote had been undermined.  In addition, as discussed below, the courts in New York allow candidates to file anticipatory petitions to validate without the normally required specificity so candidates are not injured by a delayed Board determination, thereby avoiding any constitutional problem.

- 11 -

constitutional deprivation." *Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005) (internal citations and quotations omitted). It is not proper for a federal court to "be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law." *Gold*, 101 F.3d at 800.

Under clear precedent of this circuit, right to vote and due process cases can succeed on claims pursuant to 42 U.S.C. § 1983 only if there is "*intentional* state conduct." *Shannon*, 394 F.3d at 96 (emphasis added); *see also Powell v. Power*, 436 F.2d 84, 85-86 (2d Cir. 1970); *Daniels v. Williams*, 474 U.S. 327, 328 (1986). "Where there [is] no intentional conduct by the state actors . . . [mere] election irregularities . . . do not constitute constitutional violations actionable under § 1983." *Shannon,* 394 F.3d at 95 (internal citations and quotations omitted). Put differently, "human error is something we all have to live with," *Gold*, 101 F.3d at 802, and § 1983 was not enacted to deal with "garden variety" election disputes such as this one. *Shannon*, 394 F.3d at 96 (internal citations and quotations omitted). Plaintiffs here have not alleged any intentional conduct by the Board of Elections and thus fail to meet the pleading requirements for a claim under § 1983.

- 12 -

*New York State Election Law*

Even if plaintiffs had met the pleading requirements of §
1983, the likelihood of success on the merits is not substantial
since the Board's delayed determination in no way prevented
Jennings from filing a petition to validate.

To prevent an injustice in a case like this, courts in New
York allow a candidate to file an anticipatory validating
petition, before the Board has issued its findings, so long as
the candidate then supplements his filing when he has the
required information, which Jennings did in this case.  If the
candidate has or later obtains that information but fails to
properly file it, then the courts will find his filing
procedurally deficient for lack of specificity. *Bradlow v. Bd. of
Elections of City of New York*, 545 N.Y.S.2d 247, 248 (N.Y. Sup.
Ct. 1989) (when a candidate "has enough information available to
include in the answer or in a separate proceeding specifications
regarding which invalidated signatures are allegedly valid . . .
the failure to so specify is fatal").  Jennings had the necessary
information from the Board by August 6 at the latest, before the
state court proceeding commenced, and still failed to plead with
the required specificity according the state trial and appellate
courts.  Because plaintiffs have not shown any reason Jennings
failed to timely supplement his pleadings with the necessary

- 13 -

information, there is little likelihood that plaintiffs will
prevail on their principal claim for relief, nor will this Court
challenge the findings of state law made by state courts.[10]


*Res Judicata*

Finally, there is an issue of res judicata.  The doctrine of
res judicata bars parties from litigating in a subsequent action
issues that were or could have been litigated in an earlier
proceeding, *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466-67
n.6 (1982), and applies equally to constitutional claims arising
under § 1983 which could have been argued in an earlier state
court proceeding. *Migra v. Warren City School Dist.*, 465 U.S. 75,
84-85 (1984).

This principle applies not only to the actual parties who
appeared in front of the state court; rather, "a judgment in a
prior action is binding not only on the parties to that action,
but on those in privity with them." *Schulz v. Williams*, 44 F.3d

---

[10] This Court also notes that New York Election Law § 16-102(2) includes
an alternative three day extension for a candidate whose designating petition
was invalidated by the Board of Elections.  The parties to this case did not
feel that the extension applied in this instance because the Board did not
invalidate the petition *in toto*, but instead just invalidated a number of
signatures, leaving the petition itself valid.  However, although this
question has not been decided in state court, the legislative history of this
statute, which was amended in 1992 *specifically* to prevent candidates from
being prejudiced by delayed decisions of the Board, indicates that it would
apply to a case like the one before us, giving a candidate three days after
any adverse decision by the Board to file a validating position. *See In re
Sirignano,* 196 Misc.2d 831, 833-34 (N.Y. Sup. Ct. 2003) (discussing the
history and purpose of the revised statute);*Pell v. Coveney*, 336 N.E.2d 421
(N.Y. 1975) (establishing a common law rule to the same effect which was
eventually codified in the 1992 amendment).

- 14 -

48 at 54 (2d Cir. 1994)(internal citations omitted); *see also Montana v. United States*, 440 U.S. 147, 153 (1979); *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001). The Second Circuit has stated that "one whose interests were adequately represented by another vested with authority of representation is bound by the judgment, although not formally a part of the litigation." *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir. 1977).

Interpretations of "privity" arise in cases like the present one in which voters brought constitutional claims against the New York Board of Elections after election candidates had unsuccessfully litigated related claims in state court. When determining whether there is privity between voters and candidates, the Second Circuit has held that a court "must find two things: (1) identity of interest, and (2) sufficient control by the candidates over the voters that we should deem them to be in privity with each other." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 96 (2d Cir. 2005). Courts adopt a fact-specific approach to determine whether there is privity.

In *Hoblock v. Albany County Bd. of Elections*, the Second Circuit inquired whether privity existed between voters and candidates using the test that "if the candidates have so far controlled the plaintiff voters that the voters advance only those interests that they share with the candidates, then the

- 15 -

voters are in privity with the candidates and claim preclusion bars their federal constitutional claims." 422 F.3d 77, 97 (2d Cir. 2005); *see id.* at 91 ("If the plaintiff voters are in reality the candidates' pawns, then by definition the plaintiff voters' interests are identical to the candidates'").

In the present case, there is reason to conclude that the plaintiffs are merely acting as the pawns of the candidate in order to give him a second bite at the apple in federal court. Although couched in terms of the right to vote, the interests being advanced by the voters, requesting that Jennings be placed on the ballot, are identical to Jennings' own interest and wishes. Even plaintiff Lino, who alleges that her due process rights to a hearing were violated, only requests relief in the form of placing Jennings on the ballot. Moreover, the transcript of the state trial indicates that plaintiff Lino assisted Jennings in collecting signatures for his designating petition and was the subscribing witness on several of the pages. Given this identity of interest and the fact that the § 1983 claims could have been heard in state court, *Maine v. Thiboutot*, 448 U.S. 1, 3 n.1 (1980), it seems likely that res judicata would bar plaintiffs claims if this case were to be heard on the merits.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion is

- 16 -

denied.  The clerk is directed to furnish a copy of this opinion
to all parties.


          SO ORDERED.

Dated :    Brooklyn, New York
           September 7, 2006

                    By:/s/ Charles P. Sifton (electronically signed)
                       United States District Judge